IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| NATIONWIDE MUTUAL | : | |
| INSURANCE COMPANY, | : | CIVIL ACTION |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| ROBIN ZERR, et al., | : | No. 10-4199 |
| Defendants. | : | |

MEMORANDUM

**Schiller, J.**                                                                                                                July 26, 2011

Defendants claimed underinsured motorist ("UIM") benefits following an automobile accident. Nationwide Mutual Insurance Company ("Nationwide") seeks a declaratory judgment determining: (1) the credit Nationwide may apply to Defendants' claims as a result of Defendants' settlement with third-party tortfeasors; and (2) whether Defendant Robin Zerr may collect stacked benefits under her relatives' policies. The parties' cross-motions for summary judgment are presently before the Court. For the following reasons, the Court will grant Defendants' motion with respect to Zerr's stacking claim. The motions will otherwise be denied.

**I.    BACKGROUND**

Robert Marriott was driving his motorhome on August 4, 2004 when it collided with a Freightliner tractor-trailer. (*See* Pl.'s Answer to Mot. for Summ. J. [Pl.'s Facts] ¶ 5.) Gloria Marriott and Robin Zerr were passengers in the motorhome. (*See id*.) The crash injured all three of the motorhome's occupants. (*See* Compl. ¶ 11.)

Rajinder Singh was driving the Freightliner for his employer, Simran Trucking. (Pl.'s Facts ¶ 5.) Simran Trucking also owned the truck. (*Id*.) The Freightliner was hauling cargo for

the Kephart Trucking Company ("Kephart") at the time of the accident. (*See* Pl.'s Br. in Supp. of Mot. for Partial Summ. J. Re: Credit Issues [Pl.'s Credit Br.] 11; *see also* Defs.' Answer to Mot. for Partial Summ. J. Re: Credit Issues [Defs.' Credit Facts] ¶ 31.)

Defendants brought tort claims against Singh, Simran Trucking and Kephart (collectively, "the Tort Defendants"). (Pl.'s Facts ¶ 11.) With Nationwide's consent, Defendants settled this action, for $1,400,000. (*Id*. ¶ 12.) The Tort Defendants' insurers contributed to the settlement.

Simran Trucking maintained a $1,000,000 liability policy with the Progressive Northern Insurance Company ("Progressive"). (*Id*. ¶¶ 6-7.) Progressive's contribution to the settlement was $750,000. (*Id*. ¶ 15.) Kephart had $1,000,000 in liability coverage under a policy issued by the Lincoln General Insurance Company ("Lincoln General"). (*Id*. ¶¶ 8-9.) Lincoln General contributed $650,000 to the settlement. (*Id*. ¶ 16.) Progressive also paid $17,695.27 toward Defendants' property damage claims. (*Id*. ¶ 10.)

### A.     The Settlement Credit Dispute

Defendants then sought UIM benefits from Nationwide. (*See* Defs.' Credit Facts ¶ 21.) Pursuant to Defendants' Nationwide UIM policies, Nationwide only agreed to pay damages in excess of bodily injury liability coverage, bonds or insurance in effect for the underinsured motor vehicle at issue. (*See, e.g.*, Pl.'s Mot. for Partial Summ. J. Re: Credit Issues Ex. A2, Nationwide Policy 5837C686153 issued to Robin Zerr UL1.) Nationwide would not entertain UIM claims "until the limits of all other auto insurance and bonds that apply have been exhausted." (*Id*. at UL4.)

Nationwide asserts that the settlement created a $1,982,304.73 credit toward its coverage obligations. It arrived at this figure by adding the liability limits of Simran Trucking's

Progressive policy and Kephart's Lincoln General policy, then subtracting the amount Progressive paid toward Defendants' property damage claims. (Pl.'s Facts ¶¶ 20-21.) Nationwide contends that the Freightliner had $2,000,000 in available coverage which had to be exhausted before Defendants' damages triggered the company's obligation to provide UIM benefits. (*See id*.)

Lincoln General disputed its coverage obligations in the underlying action against the Tort Defendants. (Defs.' Credit Facts ¶ 9.) Kephart had previously hired Singh to haul cargo pursuant to an owner-operator contract in August of 2001. (*Id*. Ex. 7, Owner-operator contract.) The contract apportioned the parties' responsibility to maintain liability insurance. (*Id*. at 5-6.) Singh elected to pay Kephart an additional ten dollars per week in exchange for a reduced deductible per liability claim. (*Id*. at 12.) Singh and Kephart periodically renewed this contract between 2001 and 2004. (*See id*. Ex. 8, Contract renewals.) The final renewal in the record extended the agreement for six months from January 29, 2004. (*Id*. at 24.)

In May of 2004, Singh formed Simran Trucking as a Pennsylvania corporation. (*Id*. Ex. 5, Pennsylvania business entity filing history for Simran Trucking Corporation [Simran filing history].) Defendants assert Kephart contracted with Simran Trucking — not with Singh — to haul the cargo on board the Freightliner at the time of the accident. (Defs.' Mot. for Summ. J. ¶ 29.) Simran Trucking, however, did not obtain Department of Transportation authorization to operate as a carrier until November of 2004, three months after the Freightliner collided with Defendants' motorhome. (Defs.' Credit Facts Ex. 6, Federal Motor Carrier Safety Administration Authority History for Simran Trucking [Simran DOT records].) Kephart also placed the Freightliner on a "drop list" between July and August of 2004, indicating that it intended to remove the truck from its subcontractor fleet. (*Id*. Ex. 9, Kephart Subcontractor

Add/Delete Tractor Listing.)  Lincoln General's obligations as Kephart's insurer were not litigated in the underlying action against the Tort Defendants.  (Defs.' Credit Facts ¶ 9.)  The parties introduced no evidence memorializing the relationship, if any, between Kephart and Simran Trucking.

The parties do not dispute that Nationwide is entitled to a credit of $982,305.73 with respect to Simran Trucking's Progressive policy; $1,000,000 in available coverage less the amount Progressive paid for property damage.  (*See* Defs.' Br. in Resp. to Pl.'s Mot. for Partial Summ. J. Re: Credit Issues [Defs.' Credit Resp.] 2.)  However Defendants, assert that Nationwide may apply only the $650,000 Lincoln General actually paid into the settlement toward Nationwide's UIM exposure because the Lincoln General coverage did not extend to the Freightliner at the time of the accident.  Nationwide asks that the Court apply Kephart's $1,000,000 policy limit.  (Pl.'s Facts ¶¶ 22-23.)

  B.  **The Stacked Coverage Dispute**

Defendants' UIM claims implicate four Nationwide policies, which were issued to:  (1) Robert Marriott; (2) Robin Zerr; (3) Ella Moyer, Robin Zerr's mother; and (4) Ella Zerr, Robin Zerr's sister.  (*See* Defs.' Answer to Mot. for Partial Summ. J. Re: Coverage Issues [Defs.' Coverage Facts] ¶ 17.)  Nationwide states that Robin Zerr is entitled to UIM benefits up to $200,000 under Ella Moyer's policy, which provides for stacked coverage.  (*Id*. ¶ 24.)  Zerr, however, claims $400,000 in UIM benefits under her own policy and the policies of her mother and sister.  (*Id*. ¶ 25.)  The parties dispute whether Zerr's policy provided stacked coverage at the time of the accident.  (*See id*. ¶ 18.)

Robin Zerr signed a stacking waiver when she purchased UIM coverage from Nationwide on April 19, 1993.  (*Id*. Ex. 10, Apr. 19, 1993 Uninsured Coverage Limits [1993

4

UIM Waiver].)  She later modified her policy to drop UIM coverage effective October 20, 1999. (*Id*. Ex. 12, Oct. 20, Oct. 1999 Nationwide Policy Declarations.)  Robin Zerr signed a UIM coverage waiver rejecting coverage under her own policy and the policies of relatives living in her household at that time.  (*Id*. Ex. 11, Oct. 20, 1999 Rejection of Underinsured Motorist Protection [1999 UIM Waiver].)  A week later, she modified the policy to cover a different vehicle, and added UIM coverage.  (*Id*. Ex. 13, Oct. 27, 1999 Nationwide Policy Declarations.)

## II.     STANDARD OF REVIEW

Summary judgment is appropriate when the admissible evidence fails to demonstrate a genuine dispute of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).  The same standard applies to cross-motions.  *Lawrence v. City of Phila.*, 527 F.3d 299, 310 (3d Cir. 2008). When the movant does not bear the burden of persuasion at trial, it may meet its burden on summary judgment by showing that the nonmoving party's evidence is insufficient to carry its burden of persuasion.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986).

Thereafter, the nonmoving party demonstrates a genuine issue of material fact if it provides evidence sufficient to allow a reasonable finder of fact to find in its favor at trial. *Anderson*, 477 U.S. at 248.  In reviewing the record, "a court must view the facts in the light most favorable to the nonmoving party and draw all inferences in that party's favor." *Armbruster v. Unisys Corp.*, 32 F.3d 768, 777 (3d Cir. 1994).  The court may not, however, make credibility determinations or weigh the evidence in considering motions for summary judgment.  *See Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 150 (2000); *see also Goodman v. Pa. Tpk. Comm'n*, 293 F.3d 655, 665 (3d Cir. 2002).

### III. DISCUSSION

#### A. Settlement Credit

When an insured settles his claim against a tortfeasor's liability carrier for less than policy limits, his UIM carrier may compute its payment as though the tortfeasor's policy limits had been paid. *Boyle v. Erie Ins. Co.*, 656 A.2d 941, 943 (Pa. Super. Ct. 1995); *see also Nationwide Ins. Co. v. Schneider*, 960 A.2d 442, 450-51 (Pa. 2008) (endorsing *Boyle*'s "credit-for-limits approach to contractual exhaustion requirements in the UM/UIM context . . . ."). The parties do not dispute that Defendants' settlement with Progressive entitles Nationwide to a credit representing the policy limit rather than Progressive's actual settlement contribution. (*See* Defs.' Credit Facts ¶ 29.)  Defendants, however, assert that Kephart's Lincoln General policy was not in effect at the time of the accident and thus did not constitute "other auto insurance" subject to the exhaustion provision. (*See id*. ¶¶ 9, 18.)  They argue in the alternative that the Lincoln General policy was not applicable because Kephart was not an "owner/operator" within the meaning of the Pennsylvania Motor Vehicle Financial Responsibility Law ("MVFRL"). (Defs.' Credit Resp. 2.)

##### 1. Defendants' credit arguments

Kephart's status as an owner/operator is irrelevant to this analysis.  Defendants rely on language from *Boyle* observing that "only owners or operators of motor vehicles are included within the circle of those liable under the underinsurance procedure." 656 A.2d at 943.  The *Boyle* court concluded that UIM policy exhaustion clauses thus "cannot validly be interpreted to require an insured to seek recovery from other than the owners and operators of vehicles involved in the accident." *Id*.

Here, Nationwide is not arguing that Defendants must pursue claims against Kephart. Rather, Nationwide asserts that Kephart's Lincoln General coverage was available to an owner/operator — Simran Trucking and/or Singh — and thus falls within the scope of the exhaustion clauses. Owner/operators in the trucking business sometimes obtain liability insurance from their freight customers. *Cf. Occidental Fire & Cas. Co. of N. Am. v. Westport Ins. Corp.*, Civ. A. No. 02-8923, 2004 WL 2028616, at *1-3 (E.D. Pa. Sept. 10, 2004) (discussing "non-owned hired auto" policies in the context of truck hiring and leasing); *Conn. Indem. Co. v. Stringfellow*, 956 F. Supp. 553, 554 (M.D. Pa. 1997) (describing relationship between owner/operator who routinely leased tractor to pull trailer of third-party company, which had purchased coverage for "anyone operating a tractor-trailer on its behalf or under a lease agreement with it."). Though these third-party shippers are not owner/operators themselves, any coverage they provide to an owner/operator may be applicable for the purposes of an exhaustion analysis. The applicability of the Lincoln General policy in this case thus depends on the relationship between Singh, Simran Trucking, and Kephart.

Defendants' motion includes exhibits which demonstrate that this relationship was ambiguous. Kephart had previously contracted with Singh, providing liability insurance for his Freightliner as part of their arrangement. (Owner-operator contract 5-6.) However, this contract expired on July 29, 2004 — prior to the accident at issue here. (Contract renewals 24.) The parties do not dispute that Simran Trucking owned the Freightliner and that Singh operated it at the time it collided with Defendants' motorhome. (Pl.'s Facts ¶ 5.) The record otherwise contains no evidence documenting a subsequent relationship between Singh and Kephart, much less a contract between Simran Trucking and Kephart.

7

It is unclear whether Kephart did business with Singh directly or with Simran Trucking as of August 4, 2004.  Singh incorporated Simran Trucking in May of 2004, but did not obtain DOT authorization for Simran Trucking to act as a carrier until November of 2004.  (Simran Trucking filing history; Simran Trucking DOT records.)  Defendants state that Kephart contracted with Simran Trucking; Nationwide denies Defendants' assertion as irrelevant.  (*See* Pl.'s Facts ¶¶ 28-29.)  This dispute raises a genuine issue of material fact.

Defendants also provide Kephart's "drop list,' which indicates that Kephart intended to remove the truck from its subcontractor fleet between July and August of 2004.  (Kephart Subcontractor Add/Delete Tractor Listing.)  Lincoln General's obligations as Kephart's insurer were not litigated in the underlying action against the Tort Defendants.  (Defs.' Credit Facts ¶ 9.)  Defendants themselves observe that Kephart had been "in the process of dropping liability insurance on the subject tractor trailer," and that "there was a dispute as to whether coverage had been effectively dropped" before the date of the accident in the underlying action.  (Defs.' Mot. for Summ. J. ¶ 32.)  They offer no evidence which might permit the Court to resolve this dispute.  Defendants thus fail to carry their burden to demonstrate that summary judgment is warranted on their settlement credit claims.

    2.    *Nationwide's credit arguments*

Nationwide also fails to demonstrate that it is entitled summary judgment.  Nationwide insists that the Lincoln General policy was applicable to Defendants' liability claims and offers a blanket denial of Defendants' assertions to the contrary.  (*See, e.g.*, Pl.'s Facts ¶¶ 24-35.)  The company also observe that it "appears disingenuous for defendants to now claim that the Lincoln General Policy was not applicable to the liability claims when the defendants, in fact, accepted

$650,000 from Lincoln General as part of the settlement of those claims." (*Id*. ¶ 34.)  Be that as it may, Nationwide identifies nothing in the record and adds nothing to the record to support its assertion that, "[a]t the time of the accident, . . . Singh was hauling freight on behalf of [Kephart] pursuant to an Owner/Operator contract with Kephart trucking." (*See* Pl.'s Credit Br. 11.)

Defendants deny Kephart continued to extend its coverage to Singh or Simran Trucking at the time of the accident, offering the "drop list" as evidence that the Lincoln General policy no longer applied to the Freightliner. (*See* Defs.' Credit Facts ¶ 10.)  Just as the Court cannot conclude that Kephart's Lincoln General policy was available to Singh or Simran Trucking, it likewise cannot determine whether the policy was inapplicable.  The Court will therefore deny both parties' motions for summary judgment on this point.

        **B.**    **Robin Zerr's Stacked Coverage**

The parties dispute whether Robin Zerr waived stacking. (Pl.'s Facts ¶¶ 48-49.) Nationwide argues that Robin Zerr executed a valid stacking waiver when she first purchased automobile insurance in 1993. (*See id*. ¶ 44.)  Because she signed a waiver "at the inception of the policy," Nationwide asserts that this original waiver remained effective after she declined and subsequently re-purchased UIM coverage in October of 1999. (*See id*.)  However, as Defendants have shown that Robin Zerr did not sign a waiver when she re-purchased UIM insurance in 1999, they have demonstrated her entitlement to stacked coverage.

"Stacking" permits an insured to aggregate coverage from different vehicles or policies to provide a greater amount of coverage than would be available under any one vehicle or policy. *Sackett v. Nationwide Mut. Ins. Co. (Sackett III)*, 4 A.3d 637, 639 n.1 (Pa. Super. Ct. 2010) (quoting *McGovern v. Erie Ins. Grp.*, 796 A.2d 343, 344 (Pa. Super. Ct. 2002)).  The MVFRL

requires insurers to offer a stacking waiver to "each named insured purchasing" UIM coverage. 75 Pa. Cons. Stat. § 1738(c); *see also Craley v. State Farm Fire & Cas. Co.*, 895 A.2d 530, 539-41 (Pa. 2006) (extending application of MVFRL's waiver provision to inter-policy stacking of single-vehicle coverage).

The Pennsylvania Supreme Court has not indicated whether an additional stacking waiver is required when UIM coverage is dropped and later repurchased for the same single-vehicle policy. *See State Auto Prop. & Cas. Ins. Co. v. Pro Design, P.C.*, 566 F.3d 86, 91 (3d Cir. 2009) (quoting *Sackett v. Nationwide Mut. Ins. Co. (Sackett II)*, 940 A.2d 329, 334 n.5 (Pa. 2007)) (noting that Pennsylvania Supreme Court's *Sackett* decisions did not resolve "arguments concerning situations involving additions to single vehicle policies."). In the absence of controlling authority, the Court must predict how the Pennsylvania Supreme Court would resolve the issue. *Berrier v. Simplicity Mfg., Inc.*, 563 F.3d 38, 45-46 (3d Cir. 2009); *see also Ash v. Cont'l Ins. Co.*, 932 A.2d 877, 880 (Pa. 2007) (citing *McKenna v. Ortho Pharm. Corp.*, 622 F.2d 657, 661 (3d Cir. 1980)).

This issue turns on whether Robin Zerr's decision to add UIM insurance to her policy constitutes a "purchase" under the MVFRL. Pennsylvania's Statutory Construction Act directs courts interpreting Pennsylvania statutes "to ascertain and effectuate the intention of the General Assembly." *See Walker v. Eleby*, 842 A.2d 389, 400 (Pa. 2004) (citing 1 Pa. Cons. Stat. § 1501). The plain language of a statute is typically the clearest indication of the General Assembly's intent. *Id*. (citing 1 Pa. Cons. Stat. §§ 1903(a), 1921(b)). While courts generally construe words and phrases according to their common usage, "technical words and phrases, and such others as have acquired a peculiar and appropriate meaning, are to be construed in accordance with such

peculiar and appropriate meaning or definition." *Pro Design*, 566 F.3d at 92 (citing *Sackett II*, 940 A.2d at 333). The term "purchase," as used in Section 1738(c) of the MVFRL, is such a term of art. *See id*. at 92-93.

Addressing the meaning of "purchase" in the context of multi-vehicle policies, the Pennsylvania Supreme Court relied on the interpretation of the state Insurance Commissioner in its opinion in *Sackett II*. *See id*. The Commissioner advised that "purchase" did not include the addition of vehicles to an existing unstacked policy, because

> once unstacked coverage is chosen and a policy is issued on that basis, the mere subsequent addition of a vehicle (an 'add-on') to the policy is not 'the new purchase of coverage' that would require a new waiver under section 1738. No new waiver is necessary because the policyholder has already decided that the policy is to be issued on an unstacked basis and any subsequently added vehicle enjoys the coverages already present in the existing policy.

*Id*. at 93 (quoting Statement of Commonwealth of Pennsylvania Insurance Commissioner and Department in Support of Application for Reargument at 8). The Third Circuit has since predicted that the Pennsylvania Supreme Court would apply the same reasoning if faced with a similar issue in a case involving a single-vehicle policy; a waiver signed at the inception of a policy would remain valid despite the addition of different vehicles or subsequent renewals of the policy. *Id*.

Here, the Insurance Commissioner's definition weighs in Robin Zerr's favor. By dropping UIM coverage entirely in 1999, she rendered the stacking waiver she signed in 1993 irrelevant; Robin Zerr could not waive stacking on coverage she no longer maintained. By adding UIM coverage again on October 27, 1999, she completed a "new purchase of coverage" within the meaning of the MVFRL. *Cf. id*. (applying the Insurance Commissioner's definition of

"purchase" to conclude that additional stacking waivers were not required for new vehicles added to a single-vehicle policy where insured waived stacking at the inception of the policy). An insurer's failure to obtain a stacking waiver entitles its insured to stack UIM coverage. *See Sackett III*, 4 A.3d at 640-41. Nationwide obtained no such waiver for Robin Zerr's re-purchase of UIM coverage on October 27, 1999. Robin Zerr is therefore entitled to stacked benefits under her UIM policy.

## IV. CONCLUSION

Defendants have demonstrated that no disputed issue of material fact precludes summary judgment on Robin Zerr's claim for stacked benefits. However, neither Defendants nor Nationwide has established whether Kephart's Lincoln General policy was available to satisfy Defendants claims following the August 2004 accident. The Court will therefore grant Defendants' motion in part and otherwise deny the parties' motions for summary judgment. An Order consistent with this Memorandum will be docketed separately.